KAVANAU *v.* FRY.

1. VENDOR AND PURCHASER—RESCISSION—EVIDENCE—FRAUD.

In suits against subdivider to rescind contracts for the purchase of lots based upon alleged fraud in having recorded plat show more frontage in block of lots than was shown on plat exhibited to plaintiff before purchase of lots, evidence *held*, insufficient to support claim of intentional fraud.

2. EQUITY—RESCISSION—DISCRETION OF COURT.

In equity, rescission is not a matter of right but rests in the sound discretion of the court.

3. VENDOR AND PURCHASER—EQUITY—RESCISSION.

Land contract may not be rescinded for discrepancy in description where enjoyment of the property is not interfered with.

4. SAME — BURDEN OF PROOF — RESCISSION — REFORMATION — FORECLOSURE.

Purchasers of lots from subdivider *held*, not to have sustained their burden of showing facts sufficient to justify rescission where lots were merely 10 feet to one side of description, constituted all of frontage on one side of the road between two cross streets and plaintiff admitted lots were worth balance due on the contracts, but the court was justified under the pleadings on disclosure of such facts in decreeing reformation and foreclosure.

Appeal from Wayne; Toms (Robert M.), J. Submitted June 18, 1935. (Docket Nos. 89, 90, Calendar Nos. 38,446, 38,447.) Decided October 11, 1935. Rehearing denied December 10, 1935.

Two separate bills by Samuel Kavanau and Samuel Kavanau and wife against Vernon C. Fry for rescission of land contracts and recovery of sums paid thereunder. Separate cross-bills by defendant against plaintiffs for reformation of the contracts, foreclosure and an accounting. Cases consolidated for trial and appeal. Decrees for defendant. Plaintiffs appeal. Affirmed.

*Harold Goodman,* for plaintiffs.

*Anderson, Wilcox, Lacy & Lawson,* for defendant.

NELSON SHARPE, J. The plat of Ridgefield subdivision of part of the southeast quarter of section 4, town 1 south, range 11 east, city of Detroit, was filed in the office of the register of deeds of the county of Wayne by the proprietors of the lands embraced therein, on the 24th day of January, 1924.

On its south side appears a block of land fronting on the Seven Mile road, west, consisting of four lots numbered 47, 48, 49 and 50. Lot 47 has a frontage of 50 feet, lot 48 of 60 feet, lot 49 of 40 feet, lot 50 of 50 feet, and each lot is 100 feet in length. There is a public alley, 18 feet in width, in the rear thereof. The southeast corner of lot 50 is located 33 feet north of the south line of section 4 and 331 feet west of the east line thereof. Before this plat had been recorded, a preliminary one had been made in which the southeast corner of lot 50 was located 341 feet west of the east line of said section.

On November 1, 1922, the defendant entered into a land contract for the sale to Susaee Taylor of lot 50, described as commencing 341 feet west of the east line of said section and, on the same day, entered into another contract for the sale to her of lot 49, commencing 391 feet west of the east line of said section. These contracts, by assignment, are now owned by the plaintiff, Samuel L. Kavanau.

On November 6, 1922, the defendant entered into a land contract for the sale to plaintiffs, Samuel L. Kavanau and Golda Kavanau, his wife, of lot 47, the southeast corner of which was stated to be 471 feet west of the east line of section 4, and, on the same day, entered into another contract to sell to the same parties lot 48. This contract is not in the record, but it appears at a later time another contract for the sale of this lot, bearing the same date, was entered into between the same parties, and the land therein described as lot 48. This was about the time that the plat was recorded and lot 48 included an extra 20 feet in width. This purchase was made by plaintiffs prior to the time when they secured the contracts for lots 49 and 50.

The street on the east side of these lots is called Stoepel avenue, and that on the west side, Wark

avenue. As platted, they are 50 feet in width, except where they border on lots 47 and 50, when they are widened to 90 feet. When the draft of the plat was first made, these streets were stated thereon to be 60 feet in width and 100 feet at the sides of lots 47 and 50, and the contracts were made with reference thereto. The 10 feet difference between the starting point in the description of the lots in the contracts, and as shown by the plat, is thus accounted for.

Before the plat was recorded, the defendant discovered that he had 20 feet more frontage in the block than described in the contracts. An effort was made to induce Susaee Taylor to purchase this land, to add to that in her contracts, but she declined to do so, and it was then offered to and purchased by the plaintiffs and added to the width of lot 48 when platted.

The plaintiffs made payments on those contracts until 1929 and 1930. There being default, defendant began summary proceedings to recover possession of the lots and obtained judgment therefor on October 9, 1931. The plaintiffs appealed therefrom to the circuit court and, while such appeals were pending, filed the bills of complaint in the suit now pending in this court. In one of them, rescission is sought of the contract for the purchase of lots 47 and 48, and in the other of lots 49 and 50. They were tried together in the circuit court but separate decrees were rendered. They have been submitted on one record in this court.

The trial court found that the plaintiffs were not entitled to the relief sought. He entered decrees reforming the contracts to conform with the recorded plat, determined the amounts due thereon, and provided for a sale thereof on default of pay-

ment, as prayed for by the defendant in his cross-bills. The plaintiffs have appealed therefrom.

The plaintiffs alleged in one of the bills of complaint that when negotiating for the purchase of the land from defendant's agent, a plat was exhibited to Mr. Kavanau which had not been recorded, in which lots 47 and 48 were described as in the land contracts, and that the width of Wark avenue was intentionally changed and the plat, as recorded, made for the fraudulent purpose of securing more frontage in the block, and that plaintiffs were fraudulently induced to purchase the additional 20 feet without any knowledge on their part that the plat to be recorded differed from that exhibited to them and from which they made their purchases. The bill of complaint relative to lots 49 and 50 contained somewhat similar allegations. The narrowing of Stoepel avenue was therein set forth.

If Mr. Kavanau examined the plat exhibited to him by defendant's agent, as testified to by him, he must have noticed that the block contained the four lots, 47, 48, 49 and 50. No alley between lots 48 and 49 appeared thereon; and there was not room for one as the frontage of the lots covered the entire block. The narrowing of the adjoining avenues widened the block by 20 feet. He testified that he was familiar with the property along the Seven Mile road and had looked at the lots a number of times after the contracts were executed. When he purchased the additional 20 feet in 1924, it is difficult to believe that he was not then aware of the change in the descriptions of the lots he had theretofore contracted to purchase. We do not find that any intentional fraud was practiced upon him by the defendant or his agent.

The plaintiffs here apply to a court of equity for rescission of their contracts. In equity, rescission

is not a matter of right but rests in the sound dis-
cretion of the court. *Hathaway* v. *Hudson,* 256 Mich.
694. In the opinion in that case the following was
quoted with approval:

" 'An application to a court of equity for the
rescission, cancellation, or delivering up of agree-
ments and securities is not founded on an absolute
right, as in case of an action at law on a contract or
in tort, but is rather an appeal to the sound discre-
tion of the court, which in granting or refusing the
relief prayed acts on its own notions of what is
reasonable and just under all the surrounding cir-
cumstances.' 9 C. J. p. 1161."

In *Baughan* v. *Mortgage & Contract Co.,* 263 Mich.
249, 251, it was said:

"In cases of this character, if the discrepancy is
such that it does not interfere somewhat seriously
with the enjoyment of the remaining portion of the
property, it is usually more equitable to decree prop-
erty damage rather than rescission and an account-
ing. Especially is this true where years have inter-
vened in which the property involved may have
greatly depreciated in value."

And the following from 27 R. C. L. p. 646, was
quoted with approval:

"Instead of granting relief by way of rescission
the court may and frequently does grant the pur-
chaser an abatement from the purchase price in
case of a deficiency in quantity, and the purchaser
has been restricted to this form of relief and a
rescission of the transaction denied even where the
vendor was guilty of fraudulent misrepresentations
as to the quantity."

The plaintiffs are not entitled to rescission as
matter of right. The burden was cast upon them
to establish facts which appeal to the discretion of
the court and are sufficient to entitle them to the

equitable relief prayed for.  Mr. Kavanau testified that, in his opinion, "this land is worth the balance due on the contracts."

They have brought the defendant into a court of equity and, under the facts presented, the court was warranted in reforming the contracts and granting foreclosure as prayed for in the cross-bills.  Under the decree the plaintiffs get the same number of feet frontage on the Seven Mile road as their contracts called for, and its value is in no way lessened by its being placed 10 feet farther to the west.

The decrees are affirmed, with costs to defendant.

POTTER, C. J., and NORTH, FEAD, WIEST, BUTZEL, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred.