## HAKE *v.* YOUNGS.

1. WITNESSES—OPINION EVIDENCE—LAYING FOUNDATION—MENTAL COMPETENCY.
   Unless lay witnesses give facts upon which their conclusions as to person's mental incompetency are based, their testimony is inadmissible, under objection.

2. Exchange of Property—Rescission—Mental Competency—Burden of Proof.

Finding of court below that plaintiff, seeking rescission of contract for exchange of property on ground of mental incompetency, had not met burden of proof, *held*, sustained by record.

3. Contracts—Rescission—Equity—Inadequacy of Consideration.

Mere inadequacy of consideration, unless so gross as to shock the conscience of the court, is not ground for rescission.

4. New Trial—Newly-Discovered Evidence.

Motion for new trial on ground of newly-discovered evidence was properly denied, where some of it was merely cumulative, as to other there was lack of showing of diligence, or affidavits failed to state specifically anticipated testimony.

Appeal from Wayne; McMahon (Maurice H.), J. Submitted April 8, 1931. (Docket No. 24, Calendar No. 35,417.) Decided June 1, 1931.

Bill by Harry Hake, by next friend, against Bert Youngs and another to set aside an exchange of real estate on the ground of plaintiff's mental incompetency. Bill dismissed. Plaintiff appeals. Remanded to take further proofs.

*Yerkes, Goddard, McClintock & Shreve,* for plaintiff.

*Albert McClatchey* and *Harry J. Weber,* for defendants.

Fead, J. This is a bill to set aside, for plaintiff's claimed mental incompetency, a trade of his 80–acre farm in Wayne county and a five-year lease on another 40 acres with option to purchase at $10,000, for defendants' property in Ypsilanti.

Plaintiff is 61 years old. He likes to live in a wagon instead of a house. For about nine years he

worked in Ypsilanti, housecleaning, and used defendants' property for headquarters for his wagon. Periodically for several years he made offers to defendant Youngs to purchase part of the city property or trade 40 acres of his farm for it. At times plaintiff enlisted the aid of one Griffin, a friend of his, who had a second-hand store on the premises, to help him in securing a trade. Their efforts were unsuccessful. The store was renting at $600 per year, the rest of the property was vacant. The value was not satisfactorily shown, but apparently runs from $12,000 to $20,000. It is under mortgage of $1,200. Youngs said he had refused an offer of a trade at $35,000. Plaintiff thought it was worth 40 acres of his land.

During plaintiff's sojourn in Ypsilanti, George Hake, his brother, and next friend in this suit, managed the farm, securing tenants and collecting the rent of $400 per year. About three years prior to the trade, plaintiff moved to the farm and since has managed it himself and continued to live in his wagon. He also at times, through Griffin, has tried to make a trade with Youngs.

On February 4, 1929, plaintiff gave one McKinney a 30-day option to purchase the farm at $500 per acre. Several witnesses testified it was worth that price. In March, plaintiff told Griffin to offer defendant 60 acres of the farm on a trade. Griffin communicated with Youngs, they visited the farm on March 5th, and, after negotiations, the trade was agreed upon as above stated. Plaintiff told Youngs of the option to McKinney expiring the next day. Youngs talked with McKinney and said he (Youngs) would honor the option if sale was made.

Youngs, Griffin, and plaintiff went to an attorney at Ypsilanti, who drafted deeds for them according

to their instructions. Youngs could not find his old deeds and obtained the descriptions of the property, which were by metes and bounds, from tax receipts. Plaintiff's deed to defendants and the lease were executed and left with the attorney to be delivered when he should check up the descriptions of defendants' land from the records. He later checked them, and, on March 7th, defendants executed their deed to plaintiff and received from the attorney and recorded plaintiff's deed to them.

March 6th, McKinney claimed to have a purchaser for the farm. He went to the attorney's office and there saw plaintiff's conveyances to defendants. Nevertheless (and he does not explain why) he took a contract of purchase of the farm from plaintiff to himself and another. No money was paid down nor the name of the real purchaser disclosed. He suggested to plaintiff that his trade to defendants be rescinded. Plaintiff went to Ypsilanti on March 7th, found that his deed to defendants had been delivered and Youngs had gone to Detroit to get it recorded. When Youngs returned from Detroit he refused to trade back.

Plaintiff and McKinney talked with George Hake, told him of the trade, and plaintiff asked him to begin suit to set aside the deeds. March 20th, proceedings were commenced in probate court to declare plaintiff mentally incompetent, and an order to that effect was entered later.

The testimony of plaintiff's mental condition was both medical and lay. Four doctors examined him after the trade. Two testified each way. Several reputable lay witnesses gave opinion that plaintiff was mentally competent. McKinney thought he was when he executed the option. Several witnesses thought plaintiff was incompetent. Some testified that plaintiff had the reputation of being incom-

petent. Most of their testimony would have been inadmissible under objection because they did not give facts upon which they based their conclusions. Plaintiff had had a credit of about $1,000 at a bank and his brothers had asked the banker not to permit him to withdraw money without their consent. However, they took no action before the trade to have him declared mentally incompetent. George Hake said plaintiff sometimes bought trinkets, such as cheap watches and jewelry. Some of the witnesses said he talked childishly. Aside from those assertions and plaintiff's inclination to live in a wagon, the record is practically devoid of facts indicating departure from the normal.

Plaintiff was sworn as a witness. The record of his testimony shows that his answers were as direct and intelligent as those of any other witness subjected to a long examination. The circuit judge was impressed with his competency from personal observation, and the record fully sustains his finding that plaintiff had not met the burden of proof of mental incompetency.

Plaintiff further claimed Youngs represented that the trade was purely tentative and he had ten days in which to accept or reject it. Plaintiff had been engaged in other real estate transactions involving deeds and abstracts and the testimony is convincing that the instruments as drafted by the attorney were those desired by the parties, and they knew their effect.

The testimony is persuasive that plaintiff was extremely desirous of obtaining the Youngs property, that he had little faith in McKinney making a sale of the farm, and that he made the exchange freely and knowingly.

From the testimony, there appears to be considerable discrepancy in the values of the properties ex-

changed. Had defendant urged or induced plaintiff to make the exchange, the difference in values would be more important. Mere inadequacy of consideration, unless it be so gross as to shock the conscience of the court, is not ground for rescission. *Albright v. Stockhill,* 208 Mich. 468. Values were not discussed by the parties nor representations made. As plaintiff for years had been attempting to make the trade, was fully acquainted with the property, and was mentally competent to judge its worth to him, the difference in values does not justify relief to him.

Plaintiff made motion for rehearing on the ground of newly-discovered evidence. The motion was not sufficient under well-settled rules. Some of the new evidence claimed was merely cumulative. As to the balance, there was lack of showing of diligence in obtaining the witnesses or the affidavits failed to state specifically the anticipated testimony so its value could be appraised.

In one respect, however, the motion needs attention. It is alleged by plaintiff's counsel that, on checking the records and the plat of the Ypsilanti property, which defendants had agreed to convey in the trade, they found that part of it had been omitted from defendants' deed to plaintiff and another part was not owned by defendants. There is no denial of this claim in the record.

The cause will be remanded to the circuit court, with directions to take proofs on such claimed deficiencies of defendants' deed to plaintiff, and to report the same to this court with the opinion of the chancellor thereon.

BUTZEL, C. J., and WIEST, CLARK, McDONALD, POTTER, SHARPE, and NORTH, JJ., concurred.