HATHAWAY v. HUDSON.

1. LIMITATION OF ACTIONS—EQUITY—FRAUD—LACHES—RESCISSION.
   Vendees' right to equitable relief by way of rescission for
   misrepresentation by vendors' agent of location of boundary
   line is not barred by statute of limitations, where vendees
   acted promptly after discovering mistake or fraud.

2. FRAUD—DILIGENCE IN DISCOVERING FRAUD—LIMITATION OF AC-
   TIONS.
   Defrauded party is not obligated to party who defrauds him to
   exercise diligence in discovering fraud.

3. LIMITATION OF ACTIONS—IMMATERIAL WHETHER FRAUD IS ACTIVE
   OR CONSTRUCTIVE—EQUITY.
   If defrauded party's remedy is essentially equitable one, it is
   immaterial whether it is based on active or constructive
   fraud, in regard to applicability of statute (3 Comp. Laws
   1929, § 13983) authorizing suit within two years after dis-
   covery of concealed fraud.

4. VENDOR AND PURCHASER—EQUITY—RESCISSION—FRAUD.
   Vendees' offer to do equity is condition of their right to equi-
   table relief by way of rescission for misrepresentation by
   vendors' agent of location of boundary line.

5. SAME—GOOD-FAITH OFFER TO PERFORM—EQUITY.
   Vendors' good-faith offer to convey necessary strip of land to
   make good their agent's misrepresentation as to location
   of boundary line was not necessarily nullified by fact that
   they were not, at that time, actually possessed of legal ability
   to do so.

6. SAME—OFFER TO PERFORM—EQUITY—RESCISSION.
   Where vendors' agent misrepresented location of boundary line,
   and mistake was not discovered for over seven years, court
   should have given them opportunity to make good their offer
   to secure necessary strip of land and tender deed thereof be-
   fore granting rescission to vendees.

Appeal from Ingham; Carr (Leland W.), J. Sub-
mitted October 20, 1931. (Docket No. 155, Calendar
No. 36,021.) Decided January 4, 1932.

On ability of vendor to perform, as condition precedent to his
enforcement of right to rescind or declare a forfeiture, see annota-
tion in 3 L. R. A. (N. S.) 103.

Bill by Earl G. Hathaway and another against Ralph S. Hudson and others to rescind a land contract. Decree for plaintiffs. Defendants appeal. Reversed conditionally.

*Shields, Silsbee, Ballard & Jennings (David R. Bishop,* of counsel), for plaintiffs.

*Fred L. Warner,* for defendants Hudson.

*Wm. H. Wise,* for defendants Griffith.

NORTH, J. This is a bill for cancellation of a land contract. Plaintiffs had decree in the circuit, and defendants have appealed.

Prior to February 10, 1920, Alex C. Krentel and George Krentel, Jr., were the owners in fee of the land hereinafter described. On that date they entered into a contract to sell the parcel to the defendant Ralph S. Hudson. On the 15th day of May, 1922, Ralph S. Hudson and wife, two of the defendants herein, entered into a contract with the plaintiffs to sell to them the same parcel of land, describing it as a lot in East Lansing, Michigan, and bounded by a line commencing on the east side of M. A. C. avenue as extended 36 rods and 5 feet north of the south line of lot 79 of College Grove plat, thence east 9 rods, thence north along the alley line 38 feet, thence west 9 rods to the east line of M. A. C. avenue as extended, thence south 38 feet to beginning. Plaintiffs have since remained in possession of the property. They continued to make payments under their contract until the latter part of 1930. In October, 1925, Mr. and Mrs. Hudson transferred their interest in this property and assigned their vendors' interest in their contract with plaintiffs to the defendants Claude E. Griffith and Pearl A. Griffith; and plaintiffs' subsequent contract payments were made to defendants Griffith.

At the time plaintiffs were negotiating the purchase of this lot, their vendors' agent pointed out iron stakes as being the monuments which marked three of its corners. In the winter of 1929-30 the city of East Lansing caused a survey and an assessor's plat to be made of the portion of the city where the lot in question is located. It was then discovered for the first time that the parcel described in plaintiffs' contract did not coincide with the parcel designated by the iron stakes. Instead, the north line of the property as described in plaintiffs' contract was 15.2 feet south of the north line as located by the iron stake monuments. As a result of the mistake in plaintiffs' contract, which locates their northerly line 15.2 feet south of the supposed northerly line, their dwelling extends 8.3 feet north of their property, and the northerly wall of their garage is 15.2 feet north of their north line.

Plaintiffs' bill for cancellation is based on the theory that their vendors' agent's misrepresentation as to the true location of the boundary lines upon which plaintiffs relied was a fraud in law entitling them to cancellation and rescission. The undisputed proof discloses that the alleged misrepresentation was made; and it also conclusively appears from the record that the misstatement was innocently made, and that none of the parties to this suit had knowledge thereof until more than seven years after plaintiffs had entered into the contract to purchase this property; and that it was then disclosed by the city's survey of the property incident to making the so-called assessor's plat. Plaintiffs acted promptly after they became aware of the mistake or alleged fraud. They tendered reassignment, of their interest in the property covered by their contract to the defendants. Plaintiffs' tender was

declined, and their bill of complaint was filed December 2, 1930.

About a week before the case was heard (March 12, 1931), defendants procured an option on a strip of land 14 feet in width along the northerly side of the parcel described in plaintiffs' contract, and seem to have sought to settle the controversy by conveying this parcel to plaintiffs upon the performance of their contract, although the circumstances are not fully in the record. Plaintiffs declined, possibly for the reason that their garage as located and the fulfillment of their contract called for a strip 15.2 feet in width. Practically at the close of the hearing in the circuit court, the defendant Ralph S. Hudson was recalled to the witness stand and testified that he was ready and willing to transfer "as much property to the north as the original line showed."

On re-cross examination he further testified that he had not prior to that time been in a position to tender plaintiffs conveyance of all the land covered by their contract, and further:

"Prior to today I had an option on 14 feet. I had that option since the first of the week. Prior to this week I have not been in a position to tender to Mr. Hathaway any land to make up the deficiency. I now claim to be in a position, as a result of some negotiation today, to place the lot lines where they are claiming it was prior to last summer."

Before conclusion of the trial, and at the suggestion of the court, there seems to have been an attempt to adjust the litigation along this line. Notwithstanding defendant Hudson asserted ability to fully perform plaintiffs' contract, the trial judge seems to have been of the opinion that he was not then in a position to require plaintiffs to accept the proffered adjustment. He found there was no

actual fraud, but that the misstatement as to the location of the lot lines was a constructive fraud and entitled plaintiffs to rescission. After deducting rental values, the defendants Hudson were deceed to repay to plaintiffs their contract payments, expenditures for taxes, insurance and repairs amounting to $1,464.67, and defendants Griffith $581.87. Such repayment was made a lien upon the respective defendants' interests in the land.

In this court, as in the circuit court, defendants urge (1) that their motion made at the close of the proofs to dismiss plaintiffs' bill of complaint on the ground that their right of action was barred by the statute of limitations should have been granted; and (2) that the circuit judge erred in denying the proffer of defendants made at the time to convey to plaintiffs the strip of land 15.2 feet in width along the northerly side of the lot described in their contract.

(1) We think the trial judge was correct in holding that plaintiffs' right to equitable relief was not barred by the statute of limitations. These defendants are not in a position to charge plaintiffs with lack of diligence in discovering that their vendors' agent had misrepresented to plaintiffs the location of the lot lines. We have often held that a defrauded party is not obligated to the person chargeable to exercise diligence in discovering a fraud. *Smith* v. *Werkheiser,* 152 Mich. 177 (15 L. R. A. [N. S.] 1092, 125 Am. St. Rep. 406); *Lewis* v. *Jacobs,* 153 Mich. 664. Plaintiffs rely upon the statute (3 Comp. Laws 1929, § 13983) which authorizes suit within two years after discovery of a concealed fraud, although otherwise barred by the statute of limitations. Defendants contend that this statutory provision applies to actual or active fraud only, not to constructive fraud. If the injured party's remedy is essentially

an equitable one, we think it is immaterial whether it is based on active or constructive fraud.

"Courts of equity generally apply the statute of limitations by analogy in cases where the remedy in equity is concurrent only, or a substitute for an action at law. \* \* \* Where the law gives a choice of remedy, the one an action of assumpsit and the other a proceeding *in rem,* equity will not permit the statute of limitations to be evaded by resort to the latter remedy." (Syllabi) *People, ex rel. Attorney General,* v. *Railroad Co.,* 145 Mich. 140.

"But where the relief sought is in its nature one of equitable and not of legal cognizance, and the remedy is of a purely equitable nature, equity follows its own rules." *The Michigan Insurance Co.* v. *Brown,* 11 Mich. 265, 272.

"Courts of equity not only act in obedience and in analogy to the statutes of limitations in proper cases, but they also interfere in many cases to prevent the bar of the statutes where it would be inequitable or unjust. Thus for example if a party has perpetrated a fraud which has not been discovered until the statutable bar may apply to it at law, courts of equity will interpose and remove the bar out of the way of the other injured party. \* \* \*

"The question often arises, in cases of fraud and mistake \* \* \* under what circumstances, and at what time, the bar of the statute of limitations begins to run. In general it may be said that the rule of courts of equity is, that the cause of action or suit arises when and as soon as the party has a right to apply to a court of equity for relief. In cases of fraud or mistake it will begin to run from the time of the discovery of such fraud or mistake, and not before." 3 Story's Equity Jurisprudence (4th Ed.), §§ 1974, 1975.

See, also, 2 Pomeroy's Equity Jurisprudence (4th Ed.), § 917, and note.

Here the remedy sought is essentially one of equitable jurisdiction, and plaintiffs' alleged cause of action was not barred by the statute at the time their bill of complaint was filed.

(2) In connection with defendants' offer in the circuit court to convey, and after plaintiffs had consulted with their counsel relative thereto, the circuit judge said:

"I understand from counsel for plaintiffs that they refuse to accept the tentative offer that has been made to convey to them 15.2 feet of land to the north of the property described in the land contract. At the present time, in view of the fact that no formal tender of a deed to such land has heretofore been made, and in view of the fact that no tender of such deed is now made, I scarcely feel that the court has the power to require the plaintiffs to accept any such conveyance in an adjustment of the controversy. Obviously, it would be a practical solution of an unfortunate situation. Nevertheless, in a situation like this, the court does not command unlimited power, but rather the controversy must be disposed of in accordance with the rights of the parties."

It had been made to appear to the trial judge that substantially the same error had been made in conveyances fixing the lot lines of the two lots next north of plaintiffs'. Defendants' delay in making an earlier tender of performance to plaintiffs was evidently caused by the somewhat involved situation necessitating a readjustment of lot lines of the other properties to the north. While the offer to perform was somewhat belated, there is nothing in the record which in any way reflects lack of good faith in the offer. And it may be noted that this offer on the part of defendants was not more dilatory than plaintiffs' offer to do equity, which was clearly a condition of their obtaining equitable relief by way of

rescission. That the one making the offer of conveyance was not at that time actually possessed of legal ability to do so would not necessarily wholly nullify the otherwise good-faith offer. As a matter of business prudence, defendants could ill afford to actually purchase and take a deed of the strip of land in question before being assured either by plaintiffs or a decree of the court that this method of adjusting the pending litigation would be accepted. Plaintiffs had neither paid nor tendered payment in full of their contract to purchase, and therefore were not entitled to a deed from defendants. The most that they could ask was that defendants put themselves in position to perform under plaintiffs' contract when performance was due. We think defendants' offer covered all that could equitably be demanded by plaintiffs, except, possibly, costs of litigation, which the court could have controlled. As noted by the trial court, it would have worked "a practical solution of an unfortunate situation." It would have given plaintiffs everything to which they were entitled under the terms of their contract. It was a tender of full performance, and in all probability would have avoided much litigation likely to arise incident to earlier conveyances using this same description and also incident to the same situation relative to lots north of plaintiffs' property. We think, under all the circumstances of this case, the trial court should have given defendants an opportunity to secure a deed of the strip of land in question, and, upon tendering the same into court within a reasonable time and upon the payment of such terms as to the court seemed equitable, plaintiffs' bill for rescission should have been dismissed.

"The equitable remedy of rescission is not one enforceable as a matter of right, but rests on the sound discretion of the court. * * * Rescission

will not necessarily be denied merely because the contract has been executed, but where the contract is conscionable, and the complaining party has had the full benefit of it, it will not ordinarily be rescinded. * * * Some substantial reason must be shown for setting aside a contract before a court of equity will lend its aid to a party seeking the relief." 5 Thompson on Real Property, §§ 4311, 4312.

"An application to a court of equity for the rescission, cancellation, or delivering up of agreements and securities is not founded on an absolute right, as in case of an action at law on a contract or in tort, but is rather an appeal to the sound discretion of the court, which in granting or refusing the relief prayed acts on its own notions of what is reasonable and just under all the surrounding circumstances." 9 C. J. p. 1161, citing numerous cases.

See, also, 4 R. C. L. p. 487.

Appellants will be given 60 days after the filing of this opinion within which to tender to the clerk of this court a deed vesting the defendants Griffith with title in fee to the strip of land 15.2 feet in width along the northerly side of plaintiffs' lot, accompanied with an agreement that this strip of land is included within the terms of plaintiffs' contract; and thereupon a decree may be taken in this court dismissing plaintiffs' bill of complaint, but with costs of both courts to appellees.

Presumably appellants' failure to earlier secure title to the strip of land has caused appellees to incur a substantial amount of expense over and above taxable costs; but this will be compensated, at least in part, by the value of the additional 15.2 feet to the width of their lot. In the event of appellants' failure to comply with the conditions above specified, the decree of the circuit court will be affirmed, with costs.

Clark, C. J., and McDonald, Potter, Sharpe, Fead, Wiest, and Butzel, JJ., concurred.