FERD L. ALPERT INDUSTRIES, INC., v.
OAKLAND METAL STAMPING CO.

1. FRAUD—PLEADING.

The mere allegation of claim of fraud is not sufficient to establish a cause of action based thereon, as there must be averments of facts from which such inference may fairly and reasonably be drawn.

2. SAME—SALE WITH LEASEBACK—LOAN AND MORTGAGE—MISREPRESENTATION OF AN EXISTING FACT—ORAL PROMISE.

Defendant's contentions that plaintiffs' verbal promise to resell the properties was a false statement, misleading the defendant's president into believing the transaction would have the effect of a loan and mortgage, assuming such a statement were made, would not constitute fraud because a promise of something to be done in the future is not a misrepresentation of an existing fact, unless promissory statements were made by plaintiffs' agents without intent to perform said promise and with intent to perpetrate a fraud.

REFERENCES FOR POINTS IN HEADNOTES

[1, 8] 24 Am Jur, Fraud and Deceit § 243.
[2] 23 Am Jur, Fraud and Deceit § 35 et seq.
[4, 6] 17 Am Jur 2d, Contracts § 501.
[5] 23 Am Jur, Fraud and Deceit §§ 115, 133.
[7] 17 Am Jur 2d, Contracts §§ 149, 152.
[9] 23 Am Jur 2d, Deeds § 66.
[10, 11, 12] 17 Am Jur 2d, Contracts § 102.
[13, 14] 36 Am Jur, Mortgages §§ 13, 14, 119–121.
[15] 54 Am Jur, Trusts § 193.
[16] 54 Am Jur, Trusts §§ 188, 218.
[17] 54 Am Jur, Trusts § 195.
[18] 54 Am Jur, Trusts § 599.

3. SAME—ACTION—INTENTION TO PERFORM—DAMAGES—ORAL PROM-
ISE.

> Defendant has failed to state facts which, if true, would con-
> stitute a cause of action for fraud, and therefore may not
> recover damages, where, assuming plaintiffs' agent made an
> oral promise to sell the properties back to the defendant, the
> defendant made no allegation that the oral promise was made
> without intent to perform it in the future.

4. CONTRACTS—RESCISSION—FRAUD—MISTAKE.

> Fraud or mistake are grounds for rescission of a transaction.

5. SAME—RESCISSION—INNOCENT MISREPRESENTATION.

> Innocent misrepresentation is ground for rescission of a trans-
> action.

6. SAME—RESCISSION—MISTAKEN BELIEF IN NATURE OF CONTRACT.

> A contract signed under the belief that it is of a different nature
> may be voided.

7. SAME—RESCISSION—MISTAKEN BELIEF IN NATURE OF CONTRACT—
IGNORANCE OF CONTENTS OF INSTRUMENT.

> Ignorance of the contents of a contract is no excuse, where the
> contract is sought to be voided because it was signed under the
> belief that it was of a different nature.

8. SAME—RESCISSION—PLEADING.

> Defendant has failed to plead a cause of action for cancellation
> or rescission of conveyances and leases, where it has failed to
> plead fraud, mistake, innocent misrepresentation, or that its
> president signed the documents at issue in the belief that their
> contents were other than what appeared on their faces.

9. DEEDS—ADEQUACY OF CONSIDERATION—CREDITORS.

> Adequacy of consideration for a deed is not considered if the ex-
> ecution of the instrument was voluntary and not the result
> of oppression, misrepresentation, fraud, or undue influence,
> where rights of creditors are not involved.

10. SALES—RESCISSION OR CANCELLATION—INADEQUACY OF CONSIDER-
ATION—CREDITORS.

> Adequacy of consideration for a contract for the sale of personal
> property is not considered if the execution of the instrument
> was voluntary and was not the result of oppression, misrepre-
> sentation, fraud, or undue influence, where rights of creditors
> are not involved.

11. CONTRACTS—RESCISSION OR CANCELLATION—INADEQUACY OF CONSIDERATION—BAD FAITH.

Inadequacy of the consideration without bad faith will not justify rescission or cancellation of a contract.

12. SAME—RESCISSION OR CANCELLATION—INADEQUACY OF CONSIDERATION—UNDUE INFLUENCE—OPPRESSION.

Mere fact that defendant corporation was in severe financial difficulty does not constitute undue influence or oppression on the part of the plaintiffs, where latter were in no way responsible for the plight of defendant seeking rescission of transaction and cancellation of instruments involved in refinancing of defendant.

13. DEEDS—EQUITABLE MORTGAGES—SECURITY FOR DEBT.

Equity requires that a deed given as security for a debt be given the effect of a mortgage and not the effect of a conveyance.

14. MORTGAGES—SECURITY FOR DEBT—EQUITY—PLEADING.

Court will not impress an equitable mortgage on the property transferred to the plaintiffs where, although defendant contends the transactions in question were entered into in order to refinance its assets, the documents signed by the defendant's directors indicate that the directors were aware that the transaction in question was intended to convey title to the real estate and personal property to the plaintiffs, and defendant has not alleged that plaintiffs made any future promises which they did not intend to keep, so as to justify an equitable mortgage.

15. TRUSTS—RESULTING TRUST—INTENT—BENEFICIAL INTEREST.

A resulting trust arises when property is transferred without intent to confer the beneficial interest.

16. SAME—CONSTRUCTIVE TRUSTS—PROPERTY—BAD FAITH.

A constructive trust is impressed upon property to which title has been obtained through fraud, misrepresentation, concealment, undue influence, duress, or other unconscionable circumstances.

17. SAME—RESULTING TRUSTS—INTENT.

Resulting trust will not be imposed where the memoranda of the transaction, signed by the directors of the defendant corporation, belie the fact that a security transaction was ever intended.

18. SAME—CONSTRUCTIVE TRUSTS—MISREPRESENTATIONS.

Constructive trust will not be imposed in favor of defendant corporation, where the pleadings, together with the exhibits, taken as a whole, fail to show that it was misled as to the legal effect

of the transfers here at issue, there is no allegation that plaintiffs, now in possession of premises and personalty, have made any deliberate or intentional misrepresentations of fact, and the prior financial plight of defendant was not in any sense one for which plaintiffs were responsible.

Appeal from Macomb; Noe (Alton H.), J. Submitted Division 2 January 4, 1966, at Lansing. (Docket No. 393.) Decided April 26, 1966. Rehearing denied June 29, 1966. Leave to appeal granted by Supreme Court September 27, 1966. See 378 Mich 732, 379 Mich 272.

Complaint by Ferd L. Alpert Industries, Inc., a Michigan corporation; Norman Levy, individually and doing business as Twice Co.; Ferd L. Alpert; and Louis Alpert against Oakland Metal Stamping Co., a Michigan corporation, for damages for nonpayment of rent under certain leases. Counterclaim by defendant to rescind the leases for fraud and misrepresentation. Complaint withdrawn. Summary judgment for plaintiffs on defendant's counterclaim. Defendant appeals. Affirmed.

*Milton Y. Zussman* and *Matthews, Nank & Spier* (*Richard A. Nank,* of counsel), for plaintiffs.

*Johnston & Wendt* (*Robert L. Coburn,* of counsel), for defendant.

McGREGOR, J. On June 11, 1963, the plaintiffs herein filed a complaint against the defendant corporation for past-due rental payments under two leases which were signed January 10, 1963. One lease was for real property in the city of Warren, which required the defendant to pay $2,000 per month. The other lease was for certain personal property located on the real estate, which required defendant corporation to pay a total of $102,466.67 at the rate of $2,900 per month. The defendant's answer admitted the existence of the leases but

denied liability on the grounds that the leases were procured by the plaintiffs through fraud and misrepresentation. With the answer, the defendant filed a counterclaim which stated that, because of its critical financial situation, with an impending foreclosure of chattel mortgage and forfeiture of land contract, the defendant transferred to the plaintiffs the real estate and the personal property in question and leased these assets back from the defendant at an exorbitant and unconscionable rental. The defendant further alleged that this transaction was done for the purpose of refinancing. The plaintiffs paid off the chattel mortgage and the land contract.

The case is before this Court on defendant's appeal from dismissal of its second amended counterclaim, upon plaintiffs' motion for summary judgment.[1] Prior to said motion, the plaintiffs' complaint was withdrawn. The motion was made after defendant-counterplaintiffs' opening statement.

In order to determine whether or not the defendant's second amended counterclaim alleges facts which, if true, would constitute a cause of action, the relevant portions are set forth as follows:

"For and as counterclaim against the plaintiffs herein, defendant respectfully represents to the court:

"1. That on or about the 1st day of January, 1963, the defendant, by its president, Chester D. Chapie, contacted Ferd L. Alpert, representative of the plaintiff, Ferd L. Alpert Industries, Inc., requesting refinancing of a certain land contract and a certain chattel mortgage, in which the defendant was respectively named as the mortgagee and mortgagor.

"2. That said plaintiff thereupon agreed to refinance the defendant's business and the parties entered into negotiations with respect to the details thereof.

---

[1] GCR 1963, 117.

"3. That prior to the consummation of the transaction, the plaintiff Alpert notified the defendant that due to the size of the transaction, it would be necessary that other parties be brought in; that it later developed that such other parties were Norman Levy and Norman Levy, doing business as Twice Co., the coplaintiff herein.

"4. That on or about the 10th day of January, 1963, the day set for consummation of the supposed refinancing, the plaintiffs presented to the defendant several assignments, deeds, agreements and leases and other instruments, the legal effect of which was to transfer to the plaintiffs the title to the equipment covered by the aforesaid chattel mortgage, and an assignment of the purchaser's interest in the aforesaid land contract, together with a lease back to the defendant of the properties at an exorbitant and unconscionable rental.

"5. That after inspecting the said assignments, deeds, agreements, leases and other instruments, the defendant's president, Chester D. Chapie, inquired of the plaintiffs' representatives the reasons for handling the transaction in this manner; whereupon, the aforesaid Ferd L. Alpert replied, 'Don't worry, we will resell it to you any time for what we put in, plus interest', or words to that effect; and the said Ferd L. Alpert has, on at least one occasion subsequent to said transaction between the parties, stated to the said Chester D. Chapie, 'I want to see you make a lot of money so you can get your business back', or words to that effect.

"6. That up to this time, the parties had spoken only in terms of refinancing and that on or about January 10, 1963, was the first time defendant knew the details of the scheme, plan and design of the plaintiffs to denude it of its property and assets, and further, that on that date defendant believed it was too late to seek other aid, and being without benefit of counsel, relied upon plaintiffs' representations.

"7. That the plaintiffs expended a sum in the amount of $145,000 in satisfying defendant's then current liabilities and defendant acknowledges receipt of $2,274.66 of this amount; and that assets assigned to plaintiffs are of a value far in excess of the amount expended by plaintiffs and the purported consideration for the transfer of said assets to the plaintiffs was grossly inadequate, the entire transaction was unconscionable and could only result in the unjust enrichment of the plaintiffs at the expense of the defendant.

"8. That shortly after the execution of the aforesaid assignments, conveyances and leases, it became impossible for the defendant to pay the exorbitant and unconscionable rentals required of it by the terms of the aforesaid leases; and the said plaintiffs thereupon promptly ousted the defendant from the subject premises and seized possession of the subject equipment, and the plaintiffs are now in possession and control of all of said real and personal properties and claim the absolute ownership thereof, to the exclusion of the rights of the defendant therein."

As a remedy for the alleged fraud, the defendant Oakland Metal Stamping Company has asked alternatively for cancellation of the transactions, for the imposition of an equitable mortgage upon the equipment and real property, or $300,000 in damages. In addition to the pleadings,[2] the trial court had before it copies of the bill of sale of the personal property, a lease of the personal property, and also the real-estate lease, all of which were alleged to have been prepared by agents of the plaintiffs-counterdefendant. The bill of sale contained a separate clause which was subscribed separately by Chester D. Chapic, the president of the defendant corporation, which recites that the consideration for sale of the personal property was actual and ade-

[2] GCR 1963, 117.3.

quate and that the bill of sale was not given for the purpose of security. The court also had before it a copy of an instrument signed by all the directors of the defendant corporation which specifically authorized the president, Chester D. Chapie, to execute a bill of sale of personal property and an assignment of the purchaser's interest in the land contract, in order to effectuate a sale of these assets to the plaintiffs herein, and also, to make a lease of personal property and real estate. Also before the court was a letter, dated January 10, 1963, signed by all the directors of the defendant corporation, which included the statement that the defendant corporation was in danger of losing all interest in the personal property and the real estate at issue herein. This same letter also contained the statement that:

"We acknowledge that we have been given no option whatsoever, either orally or in writing, to purchase either the real estate or the machinery and equipment. If, in the future, our operation is extremely successful so that we find ourselves in a position where we can buy the real estate and/or personal property from you, we will at that time negotiate with you as to the purchase price and terms of payment. We are not making the sales to you based upon our future hope of purchasing either the real or personal property from you."

Does the defendant's counterclaim show a cause of action for fraudulent misrepresentation for which damages may be obtained? The mere allegation of fraud is not sufficient to establish this cause of action, but there must be averments of fact from which such inference may be drawn. *Hager* v. *Hager* (1964), 372 Mich 288. Defendant does not allege that the plaintiffs represented the documents signed on behalf of the defendant to be other than they purport to be on their faces. The defendant claims,

however, that its president was misled by the remarks of the plaintiffs' agent into believing that the plaintiffs would treat the transaction as a mortgage and would reconvey the property to defendant upon payment of the amount plaintiffs had invested in the property, plus interest. Reference to the documents signed by the defendant's directors, which are referred to above, and the authenticity of which the defendant has not contested, indicates that the plaintiffs intended the transaction to be sale with lease-back, without a right to repurchase, instead of a loan and mortgage transaction. Defendant contends that the plaintiffs' verbal promise to resell the properties was a false statement, misleading the defendant's president into believing the transaction would have the effect of a loan and mortgage. Assuming such a statement were made, it would not constitute fraud because a promise of something to be done in the future is not a misrepresentation of an existing fact (*Mieske* v. *Harmony Electric Co.* [1936], 278 Mich 61), unless promissory statements were made by the plaintiffs' agents without intent to perform said promises and with intent to perpetrate fraud. *National Cash Register Co.* v. *Hosier* (1930), 251 Mich 402. Assuming plaintiffs' agent made an oral promise to sell the properties back to the defendant, the defendant makes no allegation that the oral promise was made without intent to perform it in the future. Since the defendant has failed to state facts which, if true, would constitute a cause of action for fraud, the defendant corporation may not recover damages.

Has the defendant corporation pleaded a cause of action for cancellation or rescission of the conveyances and leases? Fraud or mistake are grounds for rescission of a transaction. *Schwaderer* v. *Huron-Clinton Metropolitan Authority* (1951), 329

Mich 258. The defendant has failed to plead fraud and likewise, it appears, has failed to plead mistake. Innocent misrepresentation is grounds for rescission. *Goodrich* v. *Waller* (1946), 314 Mich 456. The defendant has not pleaded innocent misrepresentation. While a contract signed under belief that it is of a different nature may be voided, yet ignorance of the contents of the instrument is no excuse. 17 Am Jur 2d, Contracts, §§ 149, 152. Defendant has made no allegation that its president signed the documents at issue herein in the belief that their contents were other than what appeared on their faces.

May the defendant obtain rescission or cancellation for inadequacy of consideration? Defendant contends that the property it transferred to the plaintiffs was of far greater value than the consideration received in return. Unless the rights of creditors are involved, the adequacy of consideration for a deed is not considered if the execution of the instrument was voluntary and was not the result of oppression, misrepresentation, fraud, or undue influence. 9 MLP, Deeds, § 4. *Cole* v. *Henning* (1926), 237 Mich 108. The facts pleaded by the defendant failed to show any of these elements vitiating a deed. The same is true of the sale of the personal property. Inadequacy of the consideration without bad faith will not justify rescission or cancellation. *Van Norsdell* v. *Smith* (1905), 141 Mich 355. The defendant has not pleaded any facts which show misrepresentation or undue influence. The mere fact that the defendant was in severe financial difficulty does not constitute undue influence or oppression on the part of the plaintiffs. 17 Am Jur 2d, Contracts, § 153.

Has the defendant shown that the court should impress an equitable mortgage on the property

transferred to the plaintiffs? If a deed is given as security for a debt, the principles of equity require that it be given the effect of a mortgage and not the effect of a conveyance. *Selik* v. *Goldman Realty Company* (1927), 240 Mich 612. While the defendant contends that the transactions in question were entered into in order to refinance its assets, the documents signed by the defendant's directors indicates that the directors were aware that the transaction in question was intended to convey title to the real estate and personal property to the plaintiffs. So, too, the defendant has not alleged that the plaintiffs made any future promises which they did not intend to keep, so as to justify an equitable mortgage under the principle stated in *Merrill* v. *Allen* (1878), 38 Mich 487.

Has the defendant shown cause for the imposition of a resulting or constructive trust upon the assets transferred to the plaintiffs? A resulting trust arises when property is transferred without intent to confer the beneficial interest. A constructive trust is impressed upon property to which title has been obtained through fraud, misrepresentation, concealment, undue influence, duress, or other unconscionable circumstances. *Potter* v. *Lindsay* (1953), 337 Mich 404. The pleadings, together with the exhibits before the court, taken as a whole, fail to show that the defendant was misled as to the legal effect of the transfers here at issue. There is no allegation that the plaintiffs have made any intentional or unintentional misrepresentations of fact. The memoranda of the transaction, signed by the directors of the defendant corporation, belie the fact that a security transaction was ever intended. The critically difficult financial situation in which the defendant found itself was not in any sense duress for which the plaintiffs were responsible.

This Court affirms the judgment of the trial court that the defendant has failed to state a cause of action in its second amended counterclaim. Costs to the plaintiffs-appellees.

T. G. KAVANAGH, P. J., and BURNS, J., concurred.