LENAWEE COUNTY BOARD OF HEALTH v MESSERLY

Docket No. 44690. Submitted January 2, 1980, at Lansing.—Decided July 1, 1980. Leave to appeal applied for.

William H. Messerly and Martha B. Messerly purchased certain real property in Lenawee County, Michigan. Subsequently, the Messerlys used the dwelling as income property, and sold the property on a land contract to James E. Barnes. Barnes and his wife Joan L. Barnes resided on the property for three months then moved outside Lenawee County. Thereafter, the Barneses fell behind in their land contract payments and the property was listed for sale. Subsequently, Carl A. Pickles and his wife Nancy L. Pickles executed a purchase agreement for the property, intending to use it as income property. Before signing the agreement the Pickleses inspected the apartment units and walked the property. The Barneses gave the Pickleses a quitclaim deed to cancel their obligation to the Messerlys on the land contract. Thereafter, the Messerlys and the Pickleses executed a land contract. A few days later, the Pickleses visited the property to meet the tenants and while walking the property discovered raw sewage surfacing at the northeast corner of the barn. Thereafter, a sanitation expert was contacted, tests were run, and the Lenawee County Health Department condemned the property as unfit for human habitation.

When the Pickleses discontinued payments on the land contract, the Messerlys, as defendants in an action brought by the Lenawee County Health Department, filed a cross-complaint against the Pickleses for foreclosure and a deficiency judgment.

REFERENCES FOR POINTS IN HEADNOTES

[1, 8] 17 Am Jur 2d, Contracts §§ 485, 501 *et seq.*
[2, 4, 7] 17 Am Jur 2d, Contracts §§ 143, 501.
    54 Am Jur 2d, Mistake, Accident, or Surprise § 16.
    77 Am Jur 2d, Vendor and Purchaser § 51.
[3] 17 Am Jur 2d, Contracts §§ 144, 501.
    54 Am Jur 2d, Mistake, Accident, or Surprise § 16.
[4] 77 Am Jur 2d, Vendor and Purchaser §§ 51, 57-59.
[5] 77 Am Jur 2d, Vendor and Purchaser § 210.
[6] 17 Am Jur 2d, Contracts § 102.
[7] 77 Am Jur 3d, Vendor and Purchaser § 542.

Thereafter, the Pickleses counterclaimed, alleging failure of consideration, failure to disclose, misrepresentation and willful concealment by Mr. Barnes. The Pickleses sought recission of the land contract and restitution. The Lenawee Circuit Court, Harvey W. Moes, J., determined that the Pickleses had no cause of action against either the Messerlys or the Barneses. Foreclosure of the land contract by the Messerlys was approved and judgment was entered against the Pickleses. The Pickleses appeal. *Held:*

1. Recission is an equitable remedy which is not a matter of right but rests in the sound discretion of the trial court. A mutual mistake as to the subject matter of a contract is ground for recission of the contract unless the injured party can be adequately compensated for the mistake. Generally, courts have allowed recission of a land contract where the quality of a mistake was such that it resulted in a conveyance of essentially different property than originally contemplated by the contracting parties. Recission has generally been denied where the property conveyed was in essence identical to that contracted for. The recognized justifications for recission of a land contract, mutual mistake, failure of consideration, or innocent misrepresentation, are in reality distinctions without a difference where the purchasers have at bottom agreed to pay a great deal of money for rental property which does not, in fact, exist. The Pickleses purchased real estate as income property which is devoid of any value whatsoever. Recission of the land contract between the Messerlys and the Pickleses is a proper remedy.

2. Generally, courts will not inquire into the adequacy of consideration in an agreed-upon exchange. Equity will, however, grant relief where the inadequacy of consideration is so gross as to shock the conscience of the court.

3. The finding of no cause of action by the trial judge is affirmed as to the Barneses.

Reversed.

MacKenzie, J., concurred with the majority that the trial judge's finding of no cause of action as to the Barneses should be affirmed. She dissented in part in that she would also affirm the trial judge's refusal to grant recission of the land contract between the Messerlys and the Pickleses. She considers recission to be a matter of grace, and not of right, granted in the sound discretion of the trial court. She notes that the land contract makes no mention of the intended use of the property. Furthermore, there is no indication that a sewage problem existed either before the land contract was executed or at the

time of execution. She would find that the trial court correctly denied recission to the Pickleses, who received essentially the same property they bargained for, and failed to prove that any mistake or failure of consideration existed at the time the parties entered into the contract.

## Opinion of the Court

1. Contracts — Recission — Equity — Discretion.

   Recission is an equitable remedy which is not a matter of right but rests in the sound discretion of the trial court.

2. Contracts — Vendor and Purchaser — Land Contracts — Mutual Mistake — Recission — Courts.

   Michigan courts recognize mutual mistake as a ground for recission of a contract, including land contracts.

3. Contracts — Recission — Mutual Mistake — Subject Matter.

   A mutual mistake as to the subject matter of a contract is ground for recission of the contract unless the injured party can be adequately compensated for the mistake.

4. Vendor and Purchaser — Land Contracts — Recission — Mistake — Courts.

   Generally, courts have allowed recission of a land contract where the quality of a mistake was such that it resulted in a conveyance of essentially different property than originally contemplated by the contracting parties; recission has generally been denied where the property conveyed was in essence identical to that contracted for.

5. Vendor and Purchaser — Contracts — Real Property.

   The intended use of property is a basic, essential or material element and not a collateral element of a contract for the sale of real estate.

6. Contracts — Consideration — Adequacy — Courts — Equity.

   Generally, courts will not inquire into the adequacy of consideration in an agreed-upon exchange; equity will, however, grant relief where the inadequacy of consideration is so gross as to shock the conscience of the court.

7. Vendor and Purchaser — Land Contracts — Recission — Justification.

   The recognized justifications for recission of a land contract are mutual mistake, failure of consideration, or innocent misrepresentation.

CONCURRENCE IN PART, DISSENT IN PART BY MACKENZIE, J.

8. CONTRACTS — RECISSION — DISCRETION — COURTS.
   *Recission of a contract is not a matter of right but a matter of grace to be granted or denied within the sound discretion of the trial court.*

9. PROPERTY — CONTRACTS — REAL PROPERTY — VALUE.
   *The value of real property acquired in a business transaction is a collateral matter which will not provide a basis for avoidance of a contract should the investment fail.*

*Force & Baldwin,* for plaintiff.

*Robertson, Bartlow & DesChenes, P.C.* (by *Michael J. Sauter),* for defendants.

Before: ALLEN, P.J., and V. J. BRENNAN and MACKENZIE, JJ.

V. J. BRENNAN, J. This is an appeal of right from a judgment of no cause of action against Mr. and Mrs. Pickles entered on January 25, 1979, in Lenawee County Circuit Court, amended to include a permanent injunction on April 3, 1979, and from a March 30, 1979, order denying their motion for a new trial.

The pertinent parties involved in this action are: Mr. and Mrs. Pickles, land contract vendees of property located at 6184 Sand Creek Highway, Sand Creek, Lenawee County, Michigan; Mr. and Mrs. Messerly, land contract vendors of this property; and Mr. and Mrs. Barnes, intermediate parties and former land contract vendees on a land contract with the Messerlys with respect to the identical property.

The Pickleses bought income producing real estate from the Messerlys on a land contract. Several days after executing the land contract, the Pickleses discovered raw sewage on the surface of their land. Following an inspection and tests, the

Lenawee County Health Department condemned the property as unfit for human habitation.

The following uncontested facts were developed at trial. In June, 1971, the Messerlys acquired the property at issue from Mr. Bloom. When they inquired about the sanitation system, Mr. Bloom informed them that he never had any problem with the functioning of the system, that the septic tank was located beside the steps and that the drainage field was behind the barn. In fact, unbeknownst to the Messerlys, in 1968 or 1969, Mr. Bloom, in the course of remodeling, replaced an existing septic tank with a 500-gallon septic tank without the required permit from the Lenawee County Health Department. The Messerlys used the dwelling as income property. They did not reside on the premises and only visited the property a few times between 1971 and 1977. In September, 1973, the Messerlys had the septic system cleaned as a general maintenance procedure. They never noticed any problems with the sewage disposal system and received no complaints from tenants.

Mr. Barnes purchased the property from the Messerlys on land contract in November, 1973. The Messerlys never discussed the adequacy of the sanitation system with either Mr. or Mrs. Barnes, who lived in one of the apartments from January, 1974, until March, 1974. Thereafter, Mr. and Mrs. Barnes resided outside Lenawee County. As intended, they used the dwelling as three-family income property and occasionally visited the property. In 1976, with permission of the Messerlys, Mr. and Mrs. Barnes sold off one acre for $1,500. Mr. and Mrs. Barnes fell behind in their land contract payments in 1976, and the property was listed for sale.

In March, 1977, the Pickleses executed a purchase agreement for the property, intending to use it as income property. Before signing the agreement, the Pickleses inspected the apartment units and walked the property. Mr. and Mrs. Barnes gave the Pickleses a quitclaim deed to cancel their obligation to the Messerlys on the land contract. On March 21, 1977, the Messerlys and the Pickleses executed a land contract obligating Mr. and Mrs. Pickles to pay $25,500 for the property in monthly installments of $225. The following Saturday the Pickleses went out to the property to meet the tenants and while walking the property discovered raw sewage surfacing at the northeast corner of the barn. A sanitation expert was contacted, tests were run, and the Lenawee County Health Department subsequently condemned the property as unfit for human habitation.[1]

When Mr. and Mrs. Pickles made no payments on the land contract, the Messerlys, as defendants in the action brought by the Lenawee County Health Department, filed a cross-complaint against the Pickleses for foreclosure and a deficiency judgment. The Pickleses counterclaimed on January 19, 1978. Count I of their counterclaim alleged failure of consideration, and Count II alleged willful concealment, failure to disclose and misrepresentation on behalf of Mr. Barnes. The Pickleses sought rescission of the land contract and restitution.

Following a bench trial which began on August 8, 1978, the trial judge issued an opinion on Octo-

---

[1] The Lenawee County Health Department filed a complaint on July 25, 1977, requesting temporary and permanent injunctions forbidding human habitation until sewage disposal on the property was improved. A temporary injunction was issued on October 24, 1977, and the parties stipulated at trial to permit issuance of a permanent injunction. Plaintiff Board of Health was permitted to withdraw from the suit.

ber 30, 1978, in which he determined that Mr. and Mrs. Pickles had no cause of action against either the Messerlys or Mr. and Mrs. Barnes. Foreclosure of the land contract by the Messerlys was approved, and judgment was entered against Mr. and Mrs. Pickles for $25,943.09.[2]

The trial judge found and the parties concurred that there was absolutely no fraud or misrepresentation, innocent or otherwise, on the part of the Messerlys or Mr. and Mrs. Barnes concerning the sewer system. In his opinion, the trial judge stated:

"The record is completely and unequivocally void of any person in privity with or any party having knowledge of any sewer problem whatsoever. All parties likewise had no knowledge whatsoever that the sewer system, as installed, was in violation of a code. There is absolutely no indication whatsoever that anyone kept silent about any condition. There is further no indication that anyone misled, intentionally or unintentionally, anyone else by any statement concerning conditions. There is also no indication or testimony that anyone was prevented from making a complete inquiry or examination of the property. There is further no indication or testimony that any purchaser was prevented from talking with any tenants and in fact the testimony is just exactly the opposite. Physical examination and inspection was made and conversation was held by Pickles with tenants while the owners-landlord-sellers were not present."

We find ample support in the record for the trial judge's finding of no cause of action as to Mr. and Mrs. Barnes.[3]

---

[2] The parties stipulated at trial that the Pickleses are in default in the amount of $25,943.09.

[3] Mr. and Mrs. Barnes testified that after purchasing the real estate they lived in one of the apartments from January, 1974, until March, 1974, and that they thereafter resided outside of Lenawee County. Although they visited the property occasionally, they never mowed the grass themselves and collected all rent payments by mail. They

We do not, however, concur with the trial judge's findings as to the liability of Mr. and Mrs. Messerly. On appeal, the Pickleses argue that rescission is warranted on the basis of mutual mistake as to the subject matter of the contract. Their mutual mistake argument is closely tied to their claim of failure of consideration argued below.[4] The Pickleses claim that they thought they were purchasing, and the Messerlys thought they were selling, income property. What they received, however, was property with no value.

Rescission is an equitable remedy which is not a matter of right but rests in the sound discretion of the trial court. *Hathaway v Hudson,* 256 Mich 694; 239 NW 859 (1932).

Michigan courts recognize mutual mistake as a

also stated they were never aware of any sanitation problems and never concealed any knowledge as to the adequacy of the septic system. When some sewage backed up into a bathroom in December, 1974, they had the septic system pumped. Although a slight odor remained in one bathroom, they had no reason to believe that the problem had not been alleviated, and no complaints from tenants were received.

On March 20, 1977, after the purchase agreement was signed but before the land contract was executed, Mr. Pickles asked Mr. Barnes about the location and condition of the septic tank and drain field. Mr. and Mrs. Barnes informed the Pickleses that they did not know specifically where the septic tank was, that it was in the area of the barn, that they had no problems with it, that they had had the septic tank pumped in 1974, and that as far as they knew, the system was in good working condition.

[4] The pleadings below set forth the Pickleses theory as failure of consideration. However, it appears that the trial judge considered the failure of consideration issue to be essentially rooted in an allegation of mutual mistake. While issues not pleaded or otherwise presented to the trial court are not available for use on appeal, *Long Mfg Co, Inc v Wright-Way Farm Service, Inc,* 39 Mich App 546; 197 NW2d 862 (1972), *rev'd on other grounds,* 391 Mich 82 (1974), we address the issue of mutual mistake as one "otherwise presented to the trial court".

We further note that an exception to the general rule that an issue not raised before the trial court cannot be raised on appeal exists where the issue has been fully briefed, and this Court in the interest of justice chooses to consider it. *Turner v Ford Motor Co,* 81 Mich App 521, 525, fn 2; 265 NW2d 400 (1978).

ground for rescission of a contract. *Fred L Alpert Industries, Inc v Oakland Metal Stamping Co,* 3 Mich App 101; 141 NW2d 671 (1966), *rev'd on other grounds,* 379 Mich 272; 150 NW2d 765 (1967), *Teeter v Teeter,* 332 Mich 1; 50 NW2d 716 (1951), *Schwaderer v Huron-Clinton Metropolitan Authority,* 329 Mich 258, 271; 45 NW2d 279 (1951), *Kutsche v Ford,* 222 Mich 442; 192 NW 714 (1923). Mutual mistake is also recognized as grounds for rescission of a land contract. *Harris v Axline,* 323 Mich 585, 589; 36 NW2d 154 (1949), *A & M Land Development Co v Miller,* 354 Mich 681; 94 NW2d 197 (1959).

The basis for rescission on the ground of mistake is often stated as that found in the Restatement of Contracts, § 502, p 961:

"Even though there is no such mistake as would deprive the acts of the parties of any effect on their contractual relations under the rules stated in §§ 49, 71, 456, where parties on entering into a transaction that affects their contractual relations are both under a mistake regarding a fact assumed by them as the basis on which they entered into the transaction, it is voidable by either party if enforcement of it would be materially more onerous to him than it would have been had the fact been as the parties believed it to be, except

"(a) where the welfare of innocent third persons will be unfairly affected, or

"(b) where the party seeking to avoid the transaction can obtain reformation or performance of the bargain according to the actual intent of the parties when the transaction was entered into, or

· "(c) where it is possible by compensation to the party injured by the mistake to put him in as good a position as if the transaction had been what he supposed it to be, and such compensation is given."

Under the Restatement, basic materiality is ascertained with reference to the intent of the contract-

ing parties: Did the parties mistakenly assume the existence of a basic fact in formulating the contract? Would the parties have contracted had they known of the existing situation? According to the Restatement, if the mistake does not pertain to the intrinsic basic nature of the bargain, but rather goes to a collateral matter, there is no mistake entitled to rescission, since the contracting parties received essentially that which was bargained for.

The Michigan Supreme Court adopted the Restatement view in *Harris v Axline, supra,* wherein the Court stated that "[a] mutual mistake as to the subject matter of a contract is ground for rescission of the contract, unless the injured party can be adequately compensated for the mistake". 323 Mich 585, 589.

In general, courts have allowed rescission of a land contract where the quality of a mistake was such that it resulted in a conveyance of essentially different property than that originally contemplated by the contracting parties; by the same token, rescission has generally been denied where the property conveyed was in essence identical to that contracted for.

The issue presented here is whether the asserted mutual mistake went to a basic element of the contract or to a collateral matter. We are of the opinion that the mistake here went to a basic contractual element. The Messerlys intended to sell and the Pickleses intended to purchase rental income property. What the Pickleses received, however, was property with *no* value either as income property or as a single-family residence. As previously stated, the property was condemned by the Lenawee County Health Department as unfit for human habitation. At trial, Werner Sommer, a registered engineer and land surveyor, testified

that although approximately 600 square feet were available on the property for the installation of a tile field for a sanitary disposal system, a minimum of 2,000 square feet would be required for installation of an ordinance-approved sanitary system to accommodate a three-family unit. Mr. Frederick Kesslar testified that based on U. S. Public Health Service figures and occupancy of two people in each of the dwelling's five bedrooms, 2,000 square feet would be required under ideal soil conditions for a leach bed. The only alternative is a "pump and haul" system using two 1,000 or 1,500 gallon tanks to be pumped on alternate days. No other above or below ground system could accommodate even a single family residence on the property. According to Mr. Dwyer, a real estate appraiser, the projected gross annual income of the fully occupied dwelling was $5,760. Annual expenses of $3,110.42 would result in a net income of $2,649.58. The annual cost of a "pump and haul" sewage disposal system would be $5,400, more than double the annual net income. Mr. Dwyer added that the cost of demolition of existing improvements would exceed the value of the land. The most probable use of the site, if vacant, would be sale to an adjacent landowner.

We find that the sale and purchase of the real estate as income producing property was a basic, and not a collateral, element of the land contract entered into between the Messerlys and the Pickleses.

In *Kroninger v Anast,* 367 Mich 478; 116 NW2d 863 (1962), land contract vendees brought suit for rescission on the ground that they were unable to use the real estate purchased for the purpose and to the extent that the vendor had represented. The vendor had used the building as a seven-family

apartment for a number of years when the city passed an ordinance prohibiting its use as such. The vendor continued to use the building as an apartment with no interference from the city, and subsequently sold it to the vendee as a seven-family dwelling. Quoting from the trial court's opinion, the Supreme Court affirmed rescission of the land contract:

"These representations as to the use that could be made of the building involved in the contract were of the essence of the contract and were of such a character that it cannot be said that the minds of the parties met. This renders the contract between the parties void and rescission must be granted." 367 Mich 478, 481.

We do not find that *A & M Land Development Co v Miller,* 354 Mich 681; 94 NW2d 197 (1959), compels a conclusion contrary to the one we reach here. In *A & M Land,* the Court denied rescission to plaintiff, purchaser of a subdivision containing 91 lots. That case is clearly distinguishable from the instant one. After building on 49 lots, the land purchaser attempted to rescind the contract as to the remaining lots when he found they were unsuitable for building. Fraud, failure of consideration and mistake were alleged. The Supreme Court denied rescission on the basis of fraud, since it was not proven. The Court dismissed the failure of consideration claim since the proofs did not establish that all of the lots were unsuitable for building or that plaintiff would necessarily be precluded from continuing building operations in the future. The claim of mistake, mutual or otherwise, was similarly found without merit since the Court found "no mistake as to the form or substance of the contract between the parties, or the description of the property constituting the subject mat-

ter. * * * The fact that it may be of less value than the purchaser expected at the time of the transaction is not a sufficient basis for the granting of equitable relief, neither fraud nor reliance on the misrepresentation of material facts having been established." *Id.,* 693, 694.

In the instant case, however, plaintiff purchased real estate as income property which is devoid of any value whatsoever.

Closely related to their allegation of mutual mistake is the Pickleses' contention that the useless property they received for $25,500 constitutes total failure of consideration.

As a general principle of contract law, courts will not inquire into the adequacy of consideration in an agreed-upon exchange. *Rose v Lurvey,* 40 Mich App 230, 234; 198 NW2d 839 (1972). Equity will, however, grant relief where the inadequacy of consideration is "so gross as to shock the conscience of the Court". *Wroblewski v Wroblewski,* 329 Mich 61, 67; 44 NW2d 869 (1950), *Olson v Rasmussen,* 304 Mich 639, 643; 8 NW2d 668 (1943), *Hake v Youngs,* 254 Mich 545, 550; 236 NW 858 (1931), *Rose v Lurvey, supra.*

Citing *McGhee v Wells,* 57 SC 280, 285; 35 SE 529, 531 (1900), *Texas Co v Northrup,* 154 Va 428, 443; 153 SE 659, 663 (1930), and *Sherman v Glick,* 71 Or 451, 461; 142 P 606, 609 (1914), the *Rose* Court defined grossly inadequate consideration as follows:

" 'Grossly inadequate consideration does not mean simply less than the actual value of the property. It means a consideration so far short of the real value of the property as to shock a correct mind.'

* * *

" 'An inequality so strong, gross and manifest, that it

must be impossible to state it to a man of common sense without producing an exclamation at the inequality of it.'

\* \* \*

" 'But if the inadequacy is so great as to shock a conscientious person, it alone may furnish sufficient ground for annulling the conveyance.' " 40 Mich App 230, 235-236.

The *Rose* Court allowed rescission of a land contract on the basis that the transfer of equity in property worth $12,000 for $1.05 was an "inequality so strong as to amount to a gross inadequacy of consideration". 40 Mich App 230, 236. We find that test met here, where the Pickleses agreed to pay $25,500 for property represented as income-producing property but which in fact had a negative value.

*Kroninger v Anast, supra,* allowed rescission based on innocent misrepresentation and not mutual mistake. *Kroninger,* however, does indicate that the Supreme Court found under circumstances comparable to the instant case that the represented *use* of property is a basic, essential, or material element and not a collateral element of a contract for the sale of real estate.

The drawn issues of mutual mistake, or failure of consideration, or innocent misrepresentation are in reality distinctions without a difference where the purchasers in both cases have at bottom agreed to pay a great deal of money for something, in both cases *rental* property, which does not, in fact, exist.

Under the circumstances of this case, we find rescission of the contract the proper remedy.

Reversed.

ALLEN, P.J., concurred.

MACKENZIE, J. *(concurring in part, dissenting in
part).* I agree with the majority that the trial
judge's finding of no cause of action as to the
former land contract vendees, Mr. and Mrs.
Barnes, should be affirmed. As to appellees, Mr.
and Mrs. Pickleses' land contract vendees, I would
also affirm the trial judge in refusal to grant
rescission of the land contract.

Rescission is not a matter of right but a matter
of grace, to be granted or denied within the sound
discretion of the trial court. *Harris v Axline,* 323
Mich 585; 36 NW2d 154 (1949). I am not convinced
from a *de novo* review of the record that the trial
judge's refusal to grant the appellants' claim for
rescission was an abuse of discretion.

The real issue presented by appellants is
whether the asserted mutual mistake went to an
intrinsic element of the contract or to a collateral
matter. This was the position presented in *A & M
Land Development Co v Miller,* 354 Mich 681; 94
NW2d 197 (1959), a case involving an action for
damages, partial rescission, an accounting and
other equitable relief, alleging fraud, misrepresen-
tation, failure of consideration and mistake. The
defendant in *A & M,* engaged in the business of
buying and selling land, listed for sale certain
subdivision lots, indicating that the lots were
ready to build on. The plaintiff, a residential con-
struction company, purchased some of the lots
after having inspected the property. The defendant
furnished to the plaintiff's officers an engineering
report showing that percolation tests on the prop-
erty had been performed and that the soils were
constituted of sand, gravel, and yellow clay. The
lots turned out to be unsuitable for building pur-
poses as a result of inadequate conditions for the
installation of sewage disposal facilities. The Su-

preme Court discerned no fraud or misrepresentation and denied rescission, stating that there was no failure of consideration just because the lots became unsuitable for construction. Having received the same property for which he contracted, the plaintiff was not permitted to complain of his poor investment. The Court's position in *A & M* is that the value of real property acquired in a business transaction is a collateral matter which will not provide a basis for avoidance of a contract should the investment fail.

In *Diedrich v Northern Illinois Publishing Co,* 39 Ill App 3d 851; 350 NW2d 857 (1976), rescission was disallowed where the action to rescind was brought two and one-half years after possession under the contract was taken; the structure used as income property was more than 70 years old; one of the purchasers had expertise in real estate matters and the other purchaser was an attorney; the property was purchased "as is"; there were no representations as to the condition of the plumbing and no prior problems with the plumbing had been experienced; and the seller had no idea that the existence of a septic tank (as opposed to a sewer) would be important to the plaintiffs. The Appellate Court of Illinois noted that the existence of the septic tank related only to the value of the house and to the profit that the plaintiffs had hoped to obtain from it. The Court cited *A & M* as persuasive, reasoning that the need for stability in contracts requires the result obtained and emphasizing that the doctrine of mutual mistake is not to be employed as a substitute for the doctrine of misrepresentation.

In the instant case the land contract makes no mention of the intended use of the property. There is no indication that a sewage problem even ex-

isted either before the land contract was executed or at the time of execution. Tenants had apparently lived on the property for seven or eight years while the septic system functioned properly. The vendee could have requested that the contract contain guarantees or representations by the vendors with regard to the legality or adequacy of the sanitation system on the property. Had such representations been sought and refused, the vendee had the option of conducting an investigation to determine whether the property would serve the purpose for which the vendee was making the purchase. The contract did not contain such representations. The only pertinent provision in the contract was a disavowal of an intention to guarantee: "Purchaser has examined this property and agrees to accept same in its present condition. There are no other written or additional oral understandings".

I would find that the trial court correctly denied rescission to Mr. and Mrs. Pickles, who received essentially the same property they bargained for and failed to prove that any mistake or failure of consideration existed at the time the parties entered into the contract.