AMERICAN POSTER COMPANY v. H. D. CAMMACK.[1]

February 21, 1918.

No. 20,684.

**Contract — construction of instruments part of one transaction.**
    Instruments executed at the same time, for the same purpose, and in the course of the same transaction, are, in the eye of the law, one instrument, and will be read and construed together.

Action in the municipal court of Minneapolis to recover $390 balance due upon an advertising contract. The answer among other matters al-

[1]Reported in 166 N. W. 501.

leged that before defendant's acceptance of plaintiff's proposal, plaintiff, for the purpose of inducing defendant to enter into the contract, represented to defendant that each of the programs would consist of from 12 to 16 pages, artistically printed and bound, and as an extra inducement that the different advertisements would be thrown upon a screen each night for the purpose of calling the attention of audiences thereto; that upon the strength of these representations defendant accepted the proposition; that the representations were wholly false and untrue, and that plaintiff failed to comply with the conditions of its agreement. The case was tried before Montgomery, J., who made findings and ordered judgment in favor of plaintiff for the amount demanded. From an order denying defendant's motion for judgment upon amended findings or for a new trial, defendant appealed. Reversed.

*Joseph M. Reed* and *A. C. Finney,* for appellant.
*William Howard Anderson,* for respondent.

QUINN, J.

Action to recover a balance claimed to be owing upon a contract for advertising. The cause was tried in the municipal court of Minneapolis, without a jury, resulting in findings in favor of the plaintiff. From an order denying his motion for amended findings or for a new trial, defendant appealed.

The plaintiff had a contract to furnish the Miles and Unique theaters of Minneapolis with programs for the year 1912. Defendant was engaged in the piano business as the "Cammack Piano Company." Plaintiff, through its manager Michael B. Dillion, called upon the defendant for the purpose of inducing him to place an advertisement in the programs, which at first defendant declined to do, but after a somewhat extended discussion of a certain puzzle premium scheme and the throwing of the same upon a stereopticon screen, defendant told plaintiff to put his proposition in writing, which plaintiff did in the form of a letter containing the puzzle feature. This letter was marked Exhibit A, and offered in evidence by the plaintiff. After considering the letter, defendant told plaintiff that, if he would prepare an acceptance of the same, he would sign it. Whereupon plaintiff dictated to defendant's stenographer a letter of acceptance, omitting therein mention of the puzzle

feature. The defendant signed the same and plaintiff placed his acceptance thereon. This letter was marked Exhibit B, and offered in evidence by the plaintiff. These exhibits are as follows:

EXHIBIT A.

Mr. H. D. Cammack, President,
    Cammack Piano Co.,
        City.

Dear Sir:—

Referring to the writer's interview with you this morning we beg to put before you the following proposition:

We will print you full page advertisements in the programs of the Miles and Unique theatres of Minneapolis, weekly for the period of fifty-two weeks, at the rate of $30.00 per month for each program, to be billed to you monthly at $60.00.

We will give you the exclusive privilege in your line of business for the period of one year and will print no other piano advertisements in either of the two programs during the time of your contract with us, this provided that you accept our proposition on or before Monday, January 29.

As the writer has stated to you, we expect and aim to make the two programs of high grade, catering to the discriminating public and for that reason we will absolutely exclude all objectionable class of advertising.

The Miles theatre, newly rebuilt and beautifully decorated, with seating capacity of over 2,200 will be opened Feb. 12, with high class vaudeville, playing seven nights, two performances each and nine matinees during the week—twenty-three performances each week, with a seating capacity of over fifty thousand for same. It caters to high family trade, and plays at 10, 20 and 30c. Mr. Miles doubled the capacity of the house in order to accommodate the rapidly increasing patronage of his theatre, and as remodeled, the house will be not only the largest theatre in the Twin Cities but the largest and handsomest vaudeville house west of New York.

The Unique theatre plays four shows daily; the seating capacity is about twelve hundred and it plays to an average of twenty-five thousand people each week.

The combined circulation of the two programs will reach about seventy-five thousand people a week, and it will be taking a low average if we bring down the attendance of both theatres to two million and a half per year.

In order to make the program advertisements interesting to the audience, we will offer prizes for solving certain puzzles each week, these puzzles to be composed of various names of concerns that advertise in these programs. In order to solve a puzzle one will have to read the advertisements of the program. To the one solving the largest amount of puzzles during the year we will offer a grand prize of $100.00 in cash.

The writer can assure you that we will spare no pains to make the programs most attractive and valuable to the advertisers.

Your truly,<br>M. B. Dillion,<br>Gen. Mgr.

EXHIBIT B.

Advertising Service Bureau,

  In Connection with American Poster Co.,

    Minneapolis, Minn.

Gentlemen:

We beg to herewith give you our contract for full page advertisement in the programs in the Miles and Unique theatres of Minneapolis, weekly for the period of 52 weeks, at the rate of $30.00 per month for each program to be billed to you monthly at $60.00, total for the 12 months $720.00.

It is understood that we have the exclusive privilege in our line of business for the above period with the privilege of renewing the contract for another year by giving notice of same 30 days before expiration of this contract.

It is understood that we have the privilege of changing the copy weekly in each program and if we so desire we may have a different copy in each program during the same week. We agree to furnish the copy on or before Wednesday of each week for the programs of succeeding week, otherwise the copy for current week will be repeated.

The contract begins with printing of the advertisement in the Unique

program for the week starting Feb. 4th and the Miles program the week starting Feb. 12th.

It is understood that you are to allow us a discount of 25 per cent for the first month on account of newness of the programs, but afterwards the amount of $60.00 per month will be net.

Yours very truly,

Cammack Piano Company,

By Mgr.

Accepted:

Advertising Service Bureau,

By M. B. Dillion,

Gen'l Manager.

With reference to these letters the witness Dillion testified on behalf of plaintiff, without objection, as follows:

Q. Why did you write a letter to him? (Referring to Exhibit A.)

A. I wrote a letter to him to tell him just what we had to offer.

Cross-Examination.

Q. Wasn't it also stated at that time that the contest which you stated you were going to run should be thrown upon the screens, stereopticon screens which would call the attention of the audience to it?

A. I stated that I intended to do that, but I didn't guarantee Mr. Cammack to do that every day, and it was done.

Q. Isn't it also true that you never offered any grand prize of $100?

A. We did offer that, but we saw the interest of the public lacked and that was discontinued. There were only two or three contestants and it would be foolish to give $100.

Plaintiff ran the advertisement, including the puzzle feature, for a considerable time; then, without defendant's consent, discontinued the same. Defendant became dissatisfied, paid the plaintiff in full for all advertising done to that time, June 1, and served notice upon the plaintiff canceling the contract. Plaintiff thereafter continued to run the ad, preparing the copy itself during the remainder of the year, and brought this action to recover the balance claimed to be owing therefor. according to the contract price.

The trial court found in favor of the plaintiff upon the theory that

the writing, Exhibit B, constituted the entire contract, and that Exhibit A was no part thereof; that the two letters should not be read together. and that plaintiff had fully performed the contract on his part.

It is the claim of the plaintiff that the letter, Exhibit B, was intended to be, and was, in fact, the full and complete contract between the parties to this action, and that Exhibit A should not be considered in connection therewith, while the defendant insists that the letter, Exhibit A, constituted a proposal of what the plaintiff had to offer and what it did offer in the line of advertising; that the letter, Exhibit B, was an acceptance thereof, and that the two writings constituted the contract between the parties.

Upon the trial much verbal testimony was received bearing upon the intention of the parties with relation thereto, all without objection. In the briefs and upon the argument in this court, this phase of the case was fully submitted, without reference to the assignments of error.

"Instruments executed at the same time, for the same purpose, and in the course of the same transaction, are, in the eye of the law, one instrument, and will be read and construed together." White v. Miller, 52 Minn. 367, 54 N. W. 736, 19 L. R. A. 673; Brackett v. Edgerton, 14 Minn. 134 (174), 100 Am. Dec. 211; Myrick v. Purcell, 95 Minn. 133, 103 N. W. 902, 5 Ann. Cas. 148.

We are of the opinion that the testimony, when considered as a whole, establishes the fact that the two letters were executed at the same time; that it was the intention of the parties that they should constitute the contract between them. When the plaintiff discontinued the puzzle feature mentioned in Exhibit A, it violated the terms of the contract, which justified the defendant in canceling the same.

Reversed.