Elaine TRENGEN, as Guardian of the Persons and Estates of Louis J. Mongeon and Margaret E. Mongeon, et al., Plaintiffs and Appellants,

v.

Pearl MONGEON, Defendant and Respondent.

Civ. No. 8811.

Supreme Court of North Dakota.

Feb. 15, 1973.

Rehearing Denied April 12, 1973.

See also N.D., 200 N.W.2d 50.

Duffy & Haugland, Devils Lake, for plaintiffs and appellants.

Foughty, Christianson, Thompson & Rutten, Devils Lake, for defendant and respondent.

TEIGEN, Judge.

This suit was brought on behalf of Louis and Margaret Mongeon by their daughter, as guardian, against Pearl Mongeon, the widow of their son Ernest, to recover six quarters of land which were conveyed by Louis and Margaret to Ernest and Pearl on May 9, 1967.

The district court dismissed the action, holding that there was consideration for the conveyance and that the plaintiffs failed to substantiate their charge of fraud and undue influence by the decedent. This appeal is from the judgment of dismissal.

Ernest Mongeon worked and farmed for his parents until the early 1940's when he married Pearl. At that time Louis and Margaret moved off the farm and Ernest farmed their land on a crop-share basis, although Louis continued to help the farming operation both financially and physically.

In 1950 Ernest purchased three quarters of land from Louis and Margaret and also received one quarter from them as a gift. In 1965 Louis and Margaret joined with Ernest in a note and mortgage covering Ernest's land plus three quarters owned by Louis and Margaret in order that Ernest could increase an existing loan from the Federal Land Bank. They also built a barn on Ernest's land as a gift and helped him finance the purchase of a combine. There is no record of any discord between Ernest and Pearl and Louis and Margaret.

The transaction which constitutes the basis for this action took place on May 9, 1967. On that date Louis and Margaret executed a warranty deed for approximately 960 acres of land to Ernest and Pearl. The deed contains a recital and an acknowledgment of the receipt of $38,400 as consideration for the conveyance. At the same time an agreement was entered into between the two parties whereby Ernest and Pearl agreed to pay to Louis and Margaret the sum of $1,800 annually for as long as both or the survivor of them shall live. The agreement states that

"the consideration for this agreement is the conveyance of approximately nine hundred and sixty (960) acres of land to the said Ernest Mongeon and Pearl Mongeon, his wife, this date, said land having been devised to the said Ernest Mongeon by the Wills of said Louis J. Mongeon and Margaret E. Mongeon."

■ The first issue to be discussed concerns the construction of the two instruments, the deed and the agreement. Instruments which have been executed at the same time, by the same parties, in the course of the same transaction, and concerning the same subject matter, are to be read and construed together. American Poster Co. v. Cammack, 139 Minn. 372, 166 N.W. 501 (1918); Place v. Place, 207 Kan. 734, 486 P.2d 1354 (1971); Parks v. Frankfurt, 476 S.W.2d 717 (Tex.Civ.App. 1972); Hoerner Waldorf Corp. v. Bumstead-Woolford Co., 494 P.2d 293 (Mont. 1972). Section 9–07–07, N.D.C.C., provides that "[s]everal contracts relating to the same matters between the same parties and made as parts of substantially one transaction are to be taken together." In First Nat. Bank v. Flath, 10 N.D. 281, 86 N.W. 867 (1901), the court said that this statute "plainly means that they are to be 'taken together' for the purpose of interpreting, either the transaction to which they relate, or the several contracts themselves." See also Knox v. Krueger, 145 N.W.2d 904 (N.D.1966). The deed and the agreement must therefore be construed together.

In construing these two instruments "[t]he rule is that a party to a written contract may show that the consideration therefor is different from that recited in the writing. [Citations.] But this rule is simply that, in so far as the writing is a receipt, a statement of a fact, it is subject to modification, explanation, or contradiction. * * * It is never applied to the extent of permitting a party to show that the agreement was other than that set forth in the writing." Clark v. Henderson, 62 N.D. 503, 244 N.W. 314, 315, 316 (1932). In Allgood v. National Life Ins. Co., 61 N.D. 763, 240 N.W. 874, 875 (1932), the court quoted with approval the following statement from Harding v. Robinson, 175 Cal. 534, 166 P. 808 (1917):

" 'Where the statement in a written instrument as to the consideration is more than a mere statement of fact or acknowledgment of payment of a money consideration, or is of a contractual nature, as where the consideration consists of a specific and direct promise by a party to do certain things, this part of the contract can no more be changed or modified by parol or extrinsic evidence than any other part.' "

■■ Therefore the trial court properly allowed parol evidence to show a failure of consideration recited in the deed and did not allow parol evidence to vary the terms of the agreement, such terms being the annual payment of $1,800 in exchange for the conveyance of the land in question.

The above holding of the trial court is predicated upon an absence of fraud or undue influence on the part of Ernest.

"Where a written contract is complete, clear, and unambiguous, and contains mutual contractual covenants, or the consideration consists of specific direct promise to do or not to do certain things, such parts cannot be changed by parol,

nor new terms added, in the absence of fraud, misconduct, or accident." Allgood v. National Life Ins. Co., 240 N.W. 874.

The second issue, therefore, is whether Ernest took advantage of the confidential relationship which existed between himself and his parents, and by means of fraud and undue influence caused them to convey the land in question to himself and the defendant, thereby giving cause for the imposition of a constructive trust in favor of his parents.

■ Section 59–01–05, N.D.C.C., provides that "[a]n implied trust is one which is created by operation of law." A constructive trust comes within the definition of an implied trust. Van Sickle v. Olsen, 92 N.W.2d 777 (N.D.1958). Under Section 59–01–06, N.D.C.C., an implied trust arises in the following manner:

"2. One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he has some other and better right thereto, an implied trustee of the thing gained for the benefit of the person who would otherwise have had it."

In Wildfang-Miller Motors, Inc. v. Miller, 186 N.W.2d 581, 582 (N.D.1971), the court held as follows in paragraphs 1, 2 and 3 of the syllabus:

"1. A constructive trust will be imposed by the courts in order to do equity and prevent unjust enrichment when title to property is acquired by fraud, duress, undue influence, or is acquired or retained in violation of a fiduciary duty.

"2. The existence of a constructive or resulting trust in real property may be established by parol evidence that is clear, convincing, and satisfactory.

"3. Where it is sought to impose a constructive trust upon a conveyance of real estate the existence of a confidential relationship between the grantor and grantee is of major importance to be considered in connection with other facts and circumstances in the case. The law recognizes that a relationship known as a confidential relation may exist between the parties to a transaction, where by reason of kinship or professional, business, social, or family relations, confidence is naturally inspired or, in fact, reasonably exists. A confidential relation is not confined to any specific association of parties but applies generally to all persons who are associated by any relation of trust and confidence."

The plaintiffs' charge of fraud and undue influence rested in part on testimony of conversations which Louis had with Ernest prior to the conveyance. The trial court held that testimony came within Section 31–01–03, N.D.C.C., and was inadmissible. That section reads in part as follows:

"In any civil action or proceeding by or against executors, administrators, heirs at law, or next of kin in which judgment may be rendered or ordered entered for or against them, neither party, except as provided in section 31–01–04 and section 31–01–05, shall be allowed to testify against the other as to any transaction whatever with or statement by the testator or intestate, unless called to testify thereto by the opposite party."

■ Plaintiffs argue that because this action is brought against the defendant as the survivor in a joint tenancy deed she is not appearing in any capacity which brings her within this statute. We agree.

In Mowry v. Gold Stabeck Co., 48 N.D. 764, 767, 186 N.W. 865, 866 (1922), an action to determine adverse claims to a half section of land, the plaintiff had received a deed to the land from his father prior to the father's death. At the trial the defendant was allowed to testify concerning many transactions and arrangements he had with the deceased. On appeal the plaintiff contended that the trial court had erroneously

received the defendant's testimony. The court held as follows:

"The statute, precluding testimony concerning transactions had with deceased persons, is specific in its character, and relates only to actions wherein the personal representative, heirs, or next of kin are parties. Section 7871, C.L. 1913. [Section 31–01–03, N.D.C.C.] The plaintiff did not appear in that capacity; he claims title through a deed made by his father during his lifetime. The statute cannot be extended by judicial construction beyond its plain application."

To the same effect see also Heuer v. Heuer, 64 N.D. 497, 253 N.W. 856 (1934); McDonald v. Miller, 73 N.D. 474, 16 N.W. 2d 270 (1944); Shong v. Farmers' & Merchants' State Bank, 70 N.W.2d 907 (N.D. 1955).

An analagous fact situation is present in this case. The land in question passed to the defendant by right of survivorship upon Ernest's death and was not a part of his estate.

"3. A joint tenant who survives does not take the moiety of the other tenant from him or as his successor, but takes it by right under the conveyance or instrument by which the joint tenancy was created." In re Kaspari's Estate, 71 N. W.2d 558, 560 (N.D.1955).

■ The trial court was therefore in error in ruling that the court would not consider testimony of conversations Louis had with Ernest.

Plaintiffs' counsel was allowed to make an offer of proof by stating what Louis would testify, but was not allowed to make the offer of proof in the form of direct examination of Louis. The substance of the offer of proof is that the conveyance of the land in question took place because Ernest approached his father with the request that he deed the land to him so that he could obtain a loan from the Federal Land Bank.

Following the offer of proof the plaintiffs testified to the effect that they understood that the transaction was neither a gift nor a sale, but was to be only a temporary conveyance and that the land would be returned to them after Ernest had paid off the loan. The content of the conversations between Louis and Ernest can therefore be inferred from this testimony, which was received by the trial court and is more extensive than the offer of proof. The trial court, at pp. 3 and 4 of its opinion, said:

"Louis Mongeon testified that 'in a way' he didn't expect to be paid for the land, but expected the land back, and that the transaction was done only so that Ernest could get a loan. The voice of Ernest Mongeon is silent. We do not know his expectations or intentions. The trier of fact is not required to accept the uncontradicted evidence of an uncorroborated interested party. Stormon v. Weiss, (N.D.) 65 N.W.2d 475, 518. In re Tjarks' Estate, 55 S.D. 636, 227 NW 84, 85 contains this statement:

"'Where the only person who could directly dispute a witness is dead, the testimony of that witness should be clearly scrutinized, its reasonable probability should be carefully considered, and, for this purpose attention should be given to the circumstances surrounding any transaction which the witness may narrate, and his testimony compared with all inferences derivable from all the established facts.'

"The above statement is cited with approval in Stormon v. Weiss, supra. The statements of Louis Mongeon, while not necessarily being rejected by the Court, were admittedly given skeptical scrutiny and viewed together with proven circumstances and inferences arising from the totality of testimony."

■ It is clear from the record that the trial court had all of the facts contained in the offer of proof before it and that it

considered these facts in its decision. Thus, although it was error to have rejected the testimony of the conversations, we feel such error was not prejudicial. The erroneous rejection of evidence will not be deemed prejudicial in a court-tried case where the facts of the transaction are before the court from other evidence. Horton v. Kyburz, 53 Cal.2d 59, 346 P.2d 399 (1959); Ellis v. Williams, 312 S.W.2d 97 (Mo.1958); Bank of Dallas v. Wright, 47 S.D. 88, 196 N.W. 300 (1923); Hagin v. DeGeest, 85 S.D. 418, 185 N.W.2d 478 (1971).

The trial court's finding of fact No. 12 is "[t]hat the plaintiffs have failed to prove that the defendant and her husband were guilty of fraud, duress, or undue influence towards the plaintiffs herein." The scope of review of that finding on an appeal to this court from a case tried without a jury is limited by Rule 52(a) of the North Dakota Rules of Civil Procedure, which provides in part:

"Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."

■ In applying the above rule this court must give great weight to the findings made and the inferences drawn by the trial court. We will set aside a finding only if we find, based upon all the evidence, that it is clearly erroneous. We have reviewed the evidence and conclude that we cannot hold that finding of fact No. 12 is clearly erroneous.

■ The final issue that it is necessary to discuss is the plaintiffs' contention "[t]hat the Court erred in finding the consideration adequate for the six quarters of land in that $1800 per year for the lives of Louis Mongeon and Margaret Mongeon who were of the age of 87 and 83 years old respectively at the time, is so shocking and inequitable that it taxes the credibility."

The trial court's finding of fact No. 13 is as follows:

"That the only monetary consideration for the transfer of the land herein legally described was $1,800.00 per year during the lifetime of the parents of Ernest Mongeon to the said parents; that love and affection and the appreciation of the past services rendered to the parents by Ernest Mongeon were factors that motivated the plaintiffs to enter into the transaction transferring their land to their son and his wife, the defendant herein."

In Rose v. Lurvey, 40 Mich.App. 230, 198 N.W.2d 839, 841 (1972), the Michigan Court of Appeals held:

"It is a general principle of contract law that courts will not ordinarily look into the adequacy of the consideration in an agreed exchange. Equity will, however, grant relief where the inadequacy of consideration is particularly glaring."

The court in *Rose* cancelled the defendants' quitclaim deed and land contract assignment where the entire consideration for the transfer of equity in the property worth approximately $12,000 amounted to $1.05.

In the present case the consideration is of an indeterminable value. Monetarily, payment of the sum of $1,800 was made in the fall of 1967, and that sum will continue to be payable on or before November 1 of every year for as long as both or the survivor of the plaintiffs shall live. Payments received by the plaintiffs to the present time total $10,800.

"Whether the consideration for a deed is adequate ordinarily rests with the parties. Since adequacy of consideration is not necessary to sustain a deed, and any valuable consideration, however small, is sufficient, the consideration need not equal the value of the property conveyed, especially where no creditor's rights are affected. Indeed, the merely nominal consideration of one dollar, which is fre-

quently recited in deeds, evidences a sufficient consideration. So, where, as compared with the actual value of the property or interest received, the consideration is adequate, the deed will stand, whether such consideration be merely a valuable one without any monetary payment or a valuable one coupled with pecuniary advances. Adequacy of monetary consideration is not an important element in a conveyance which has for its principal purpose the conferring of a gift or endowment rather than financial gain. The adequacy of consideration is not to be viewed with hindsight, but it should rather be considered from the viewpoint of the parties at the time the deed was executed. The ordinary standard for testing the adequacy of consideration to support a transfer of property is not applicable to a deed conveying realty on condition that the grantee care for the grantor during the remainder of the grantor's life because of the uncertainty of life involved in such agreements. In considering the adequacy of consideration of a promise to care for and support a grantor for the remainder of his life in exchange for a conveyance of land, conditions existing at the time the contract is made are controlling, and subsequent events, such as the early death of the person to be cared for cannot be used to determine the adequacy of the consideration." *26 C.J.S. Deeds § 20*, at 615.

See also *23 Am.Jur.2d Deeds, § 66.*

The trial court also found that the plaintiffs' love and affection for their son Ernest was both a motivating factor and part of the consideration for the transaction.

"Natural love and affection has always been held to be sufficient consideration for a deed where the relationship of the parties is such as to justify the presumption that love and affection exist." *Gross v. Young,* 242 Ark. 604, 414 S.W. 2d 624, 627 (1967).

23 Am.Jur.2d Deeds, § 64; 26 C.J.S. Deeds § 18.

The love and affection the plaintiffs felt toward Ernest is evidenced by the fact that, as stated in the agreement, the land in question had been devised to Ernest by the wills of both Louis and Margaret, and nine days after the land was conveyed to Ernest and the defendant, Louis and Margaret executed new wills, each of which contained this provision:

"I have purposely omitted my son, Ernest Mongeon, as a devisee or legatee under this Will, for the reason that my [wife, Margaret Mongeon] [husband, Louis Mongeon] and I have made disposition of substantial farmlands to him during our lifetime *for a fair consideration * * *"* [Emphasis added.]

Since the plaintiffs' brief places the value of the land conveyed at $80,000 in 1967, an inference that can be drawn from the above provision is that the plaintiffs regarded both the money and their love and affection for Ernest as consideration for the transaction.

We conclude that, in the absence of a finding of fraud or undue influence, the evidence is sufficient to support a finding that there was adequate consideration to uphold the conveyance of the land from the plaintiffs to Ernest and the defendant.

Judgment affirmed.

STRUTZ, C. J., and ERICKSTAD, PAULSON, and KNUDSON, JJ., concur.